UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-52(DSD/TNL)

Smiths Group, plc,

    Plaintiff,

v.               **ORDER**

Ronald A. Frisbie,

    Defendant.


  Jyotin Hamid, Esq. and Debevoise & Plimpton, LLP, 919
  Third Avenue, New York, NY 10022 and Lawrence M. Shapiro,
  Esq. and Greene Espel, PLLP, 222 South Ninth Street,
  Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

  Michael J. Sheehan, Esq. and DLA Piper, LLP, 203 North
  LaSalle Street, Suite 1900, Chicago Illinois and Sonya R.
  Braunschweig, Esq. and DLA Piper LLP, 80 South Eighth
  Street, Minneapolis, MN 55402, counsel for defendant.


  This matter is before the court upon the January 14, 2013,
motion for temporary restraining order (TRO) by plaintiff Smiths
Group, plc (Smiths Group).  Based on a review of the file, record
and proceedings herein, and for the following reasons, the court
grants the motion in part.


**BACKGROUND**

  This noncompetition dispute arises out of the employment of
defendant Ronald A. Frisbie by nonparty CareFusion Corporation
(CareFusion).  From September 17, 2007, through January 14, 2013,
Frisbie worked for Smiths Medical, an alleged unincorporated
division of Smiths Group, as its head of Global Operations.

Seshadri Decl. ¶ 8, 17.  Smiths Medical is a global manufacturer and distributor of medical products used in hospital, emergency, home and speciality environments.  Id. ¶¶ 8-9.  Frisbie was a senior operations executive at Smiths Medical, principally responsible for oversight of manufacturing, supply-chain logistics and purchasing.  Id. ¶¶ 18-19.

Prior to beginning work at Smiths Medical, Frisbie executed an employment contract, which included a provision requiring six-months' notice (Notice Provision) prior to terminating employment: "In the event that you decide to terminate your employment voluntarily, you agree to provide to the Company no less [than] six (6) months written notice."  Seshadri Decl. Ex. A, ¶ 12.  During the six-month period, Frisbie was to remain a Smiths Medical employee and continue to receive a pro rata share of his $300,000 annual salary.[1]  Id. ¶ 28.  Frisbie also signed a noncompetition agreement (Noncompetition Provision), which provided in part:

> I agree that for a period of one (1) year
> after termination of my employment with the
> Company: ... If I have been or am employed by
> the Company in a non-sales or marketing
> capacity, I will not render services, directly
> or indirectly, to any Conflicting Organization[2]

---

[1] This practice is known as "garden leave."  Myers v. BP N. Am., Inc., No. 08 C 3619, 2010 WL 963926, at *4 (N.D. Ill. Mar. 11, 2010).

[2] "Conflicting Organization" is defined as "any person or organization or affiliate thereof which is engaged in, or about to become engaged in, the research or development, production,
(continued...)

> nationwide in connection with the design,
> development or manufacture of a Conflicting
> Product.[3]

Seshadri Decl. Ex. B, ¶ F(b).

On January 4, 2013, Frisbie submitted his notice of resignation and announced that he would begin working for CareFusion. Compl. ¶ 23; Seshadri Decl. ¶ 2. In response, Smiths Medical placed Frisbie on "garden leave." Frisbie Decl. ¶ 19. Thereafter, on January 14, 2013, Frisbie began work at CareFusion. Id. ¶ 22.

Both Smiths Medical and CareFusion manufacture and distribute medical products, including infusion pumps and respiratory devices. Seshadri Decl. ¶¶ 12-13. CareFusion competes in thirty to forty percent of the market categories occupied by Smiths Medical. Id. ¶ 11. CareFusion is a larger company, however, and states that only three percent of its total annual revenue is generated from products that compete with Smiths Medical. Wygant Decl. ¶ 3.

---

[2](...continued)
marketing, leasing, selling or servicing of a Conflicting Product."
Seshadri Decl. Ex. B, ¶ F(c).

[3] "Conflicting Product" is defined as
> any product, process, system or service of any
> person or organization other than the Company,
> in existence or under development, which is
> the same as or similar to or competes with a
> product, process, system or service upon which
> my department has worked during the last two
> (2) years of employment and about which I
> acquire Confidential Information.
Seshadri Decl. Ex. B, ¶ F(d).

On January 7, 2013, Smiths Group filed suit, alleging breach of contract, misappropriation of trade secrets, breach of fiduciary duty and unfair competition.  On January 14, 2013, Smiths Group moved for a TRO on the breach of contract claim.  The court heard oral argument on January 17, 2013, and all parties appeared through counsel.  At oral argument, the parties indicated that settlement was possible, and the court continued consideration of the matter until January 22, 2013.  No settlement was reached, and the court now considers the motion.

## DISCUSSION

### I.  __Dataphase__ Analysis

A TRO is an extraordinary remedy, and the movant bears the burden of establishing its propriety.  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).  The court considers four factors in determining whether a TRO should issue: (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party and (4) the public interest.  Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  The movant bears the burden of proof concerning each factor.  See Gelco v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).  No single factor is determinative.  See Dataphase, 640

F.2d at 112-14.   Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. at 113.

## A.    Likelihood of Success on the Merits

The court first considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits.  S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). Frisbie argues that a likelihood of success on the merits is absent because (1) the court lacks subject-matter jurisdiction and (2) he has not committed a breach of contract.

## 1.    Subject-Matter Jurisdiction

Frisbie first argues that no likelihood of success on the merits exists because jurisdiction is lacking.  Of course, if the court lacks jurisdiction, Smiths Group cannot demonstrate a likelihood of success on the merits.  U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1348-49 (Fed. Cir. 2005).  A request for injunctive relief, however, is not a final decision on the merits, and a movant need only "establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction." Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924, 929 (8th Cir. 1965) (citation omitted).

Subject-matter jurisdiction in this matter is premised on diversity jurisdiction. Smiths Group pleads that the amount in controversy exceeds $75,000 and that complete diversity exists between Smiths Group, a foreign company headquartered in England, and Frisbie, a citizen of Minnesota. Compl. ¶ 6. Frisbie argues, however, that the real party in interest is Smiths Medical ASD, Inc. (Smiths Medical ASD), a Minnesota-based subsidiary of Smiths Group, and that it is improper for Smiths Group to stand in the shoes of the subsidiary corporation. See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 992-93 (9th Cir. 1994). In other words, Frisbie argues that Smiths Medical ASD is an indispensable party and that complete diversity is lacking because its principal place of business is St. Paul, Minnesota. See Cowen Decl. ¶¶ 9-13, 19, ECF No. 33.[4]

Smiths Group acknowledges that Frisbie performed work for, among other subsidiaries of Smiths Group, Smiths Medical ASD, but explains that he entered into the employment contracts with Smiths Group. Jones Decl. ¶ 4. Specifically, Smiths Group alleges that the term "Smiths Medical" as used in the Notice and Noncompetition Provisions, refers to an unincorporated division of Smiths Group. Id. In other words, Smiths Group states that Frisbie was hired not by Smiths Medical ASD, an independent subsidiary, but rather by an

---

[4] The docket contains two declarations from Rachel B. Cowen. To avoid confusion, the court lists the ECF docket number.

unincorporated division of Smiths Group.  Jones Decl. ¶ 3. Moreover, Smiths Group explains that Smiths Medical ASD is incorporated in Delaware and has its executive management and core sales and marketing functions in Norwell, Massachusetts.  Id. ¶ 11. According to Smiths Group, complete diversity would exist even if Smiths Medical ASD was joined to this action.

In sum, both parties make compelling arguments regarding jurisdiction.  Presently before the court, however, is not a motion to dismiss for lack of subject-matter jurisdiction, but a motion for TRO.[5]  Given this procedural posture, Smiths Group need only establish a reasonable probability that jurisdiction exists. Smiths Group has made such a showing, and the court addresses the likelihood of success on the merits.

### 2.   Breach of Contract

Smiths Group argues that Frisbie has violated both the Notice and Noncompetition Provisions.  As to the Notice Provision,[6] Frisbie responds that the clause is unenforceable because it is a personal service contract that requires specific performance. Specifically, Frisbie argues that such a negative covenant is only

---

[5] Despite captioning his January 21, 2013, memorandum as a "Supplemental Submission In Support of Its Motion To Dismiss For Lack of Subject Matter Jurisdiction," the court notes that no motion to dismiss has been filed.

[6] The employment agreement that contains the Notice Provision does not include a choice-of-law provision.  The court applies Minnesota law.

enforceable in the context of unique services, such as those of a performer or athlete.  See Safro v. Lakofsky, 238 N.W. 641, 642 (Minn. 1931) (reversing district court entry of injunctive relief and finding that "[t]here are no allegations of any peculiar skill or prowess on defendant's part as a boxer or prize fighter; there is nothing to show him to be a John L. Sullivan, a Corbett, a Dempsey, a Tunney, or a Gibbons").  Moreover, at least one other jurisdiction has declined to enforce "garden leave" provisions on equitable grounds.  See Bear, Stearns & Co. v. Sharon, 550 F. Supp. 2d 174, 178 (D. Mass. 2008) ("Because the effect of specific performance in this case would be to require the defendant to continue an at-will employment relationship against his will, it is unenforceable in that manner." (citation omitted)).  As a result, Smiths Group is unlikely to succeed on the merits of its claim for breach of the provision.

To be enforceable under Delaware law,[7] the Noncompetition Provision must: "(1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and

---

[7] The court generally "appl[ies] the choice-of-law rules of the forum state."  Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003) (citation omitted).  The employment agreement containing the Noncompetition Provision states that "this Agreement will be governed by the laws of Delaware."  Seshadri Decl. Ex. B, § J. Minnesota courts traditionally enforce choice-of-law provisions. See Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980).  Therefore, the court applies Delaware law to the Noncompetition Provision.

temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." All Pro Maids, Inc. v. Layton, No. Civ.A. 058-N, 2004 WL 1878784, at *5 (Del. Ch. Aug. 9, 2004) (citation omitted). Frisbie, however, does not argue that the Noncompetition Provision is unenforceable, and instead claims that he has not violated the terms of the provision. Specifically, Frisbie argues that CareFusion has taken measures to ensure compliance with the Noncompetition Provision. Smiths Group responds that any employment of Frisbie by CareFusion is a breach of the Noncompetition Provision.

The Noncompetition Provision explains that Frisbie "will not render services, directly or indirectly, to any Conflicting Organization nationwide in connection with the design, development or manufacture of a Conflicting Product." Seshadri Decl. Ex. B, ¶ F(b). As a result, Frisbie may work at CareFusion if he tailors his work responsibilities to comply with the Noncompetition Provision. See, e.g., Take-A-Break Coffee Serv., Inc. v. Grose, Civ. A. No. 11217, 1990 WL 67392, at *4 (Del. Ch. May 14, 1990) (denying injunctive relief where new employer created "Chinese Wall" to minimize risk of noncompliance with noncompetition agreement); Lewmor, Inc. v. Fleming, No. CIV.A.8355, 1986 WL 1244, at *3 (Del. Ch. Jan. 29, 1986) (declining to issue TRO when it was unclear that former employee was using proprietary information).

In the present action, Frisbie argues that CareFusion has taken measures to prevent him from engaging in "research, development, design modification, pricing, sales or marketing of: (1) the Alaris Syringe Module infusion pumps; [and] (2) [numerous] airway products." Frisbie Decl. Ex. D. The measures do not, however, prohibit Frisbie from working on the "manufacture of a Conflicting Product." See Seshadri Decl. Ex. B, ¶ F(b); see also Seshadri Supp. Decl. ¶ 5. Moreover, it is unclear whether the only CareFusion infusion pump that competes with Smiths Group's infusion pumps is the Alaris Syringe Module. Therefore, Smiths Group has demonstrated a substantial likelihood of success on the merits of its noncompetition claim, and this Dataphase factor weighs in favor of injunctive relief.

**B.   Irreparable Harm**

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996) (per curiam) (citations omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Smiths Group argues that the court should infer irreparable harm based on Frisbie's breach of the Noncompetition Provision.

10

See Guidant Sales Corp. v. Baer, No. 09-CV-0358, 2009 WL 490052, at *6 (D. Minn. Feb. 26, 2009) ("[I]rreparable harm may be inferred from the breach of a valid noncompete agreement." (citation omitted)). Frisbie responds that such a presumption is warranted only in situations where an employee possesses a highly technical skill-set.[8] See, e.g., Modern Controls, Inc. v. Andreadakis, 578 F.2d 1264, 1269-70 (8th Cir. 1978) (physicist); Minn. Mining & Mfg. Co. v. Kirkevold, 87 F.R.D. 324, 333 (D. Minn. 1980) (chemist). In 2011, however, Frisbie's total compensation exceeded $1.3 million. Seshadri Decl. ¶ 24. Moreover, Frisbie is involved in the design and manufacture of technical syringe pumps and respiratory devices. As a result, the court is unpersuaded that Frisbie possesses a general or non-technical skill-set. Therefore, this Dataphase factor weighs in favor of injunctive relief.

### C. Balance of Harms

As already discussed, Smiths Group has demonstrated a threat of irreparable harm if Frisbie is allowed to work in violation of the Noncompetition Provision. That harm is balanced against the potential harm to Frisbie, whose ability to work in his chosen field may be limited. The harm to Frisbie, however, is mitigated by the fact that he can conform his responsibilities at CareFusion

---

[8] Frisbie also argues that such a presumption is invalid because Smiths Group cannot show a violation of the Noncompetition Provision. As already discussed, however, a likelihood of success on the merits exits as to the noncompetition claim, and this argument is unavailing.

to comply with the terms of the Noncompetition Provision.   On balance, this Dataphase factor does not favor either party.

### D.   Public Interest

The final Dataphase factor is public interest.   As Smiths Group argues, the public benefits from the enforcement of contractual agreements.   See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003).   In response, Frisbie argues that there is also a public interest in unrestrained competition.   See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 505 (8th Cir. 1987).   In the present action, however, it appears that Frisbie is engaging in competition that violates the terms of the Noncompetition Provision.   Therefore, this Dataphase factor weighs in favor of injunctive relief. Accordingly, based upon a balancing of the Dataphase factors, a TRO is warranted.

## II.  Limited Discovery

Upon issuance of a TRO, the court may permit expedited discovery.   See Lexis-Nexis v. Beer, 41 F. Supp. 2d 950, 953 (D. Minn. 1999).   Smiths Group requests that Frisbie produce all documents in his possession that concern or reflect communication with CareFusion prior to January 7, 2013, and that he return all documents in his possession that belong to Smiths Medical.   Frisbie

requests discovery regarding the corporate structure of Smiths Group, as it relates to the citizenship of Smiths Medical.  The court grants both requests.

## III.  Bond

Smiths Group also requests that the court not require a bond or, in the alternative, order that the bond be of a nominal amount. See, e.g., Life Time Fitness, Inc. v. DeCelles, 854 F. Supp. 2d 690, 696 (D. Minn. 2012) (requiring $5000 bond to enjoin personal trainer).  Here, however, Frisbie is a highly-skilled employee in a specialized industry.  As a result, the court determines that collateral in the amount of Frisbie's 2011 total compensation is warranted.  Therefore, Smiths Group shall post bond in the amount of $1.3 million.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion for temporary restraining order [ECF No. 16] is granted in part;

2.   Defendant shall not render services nationwide in connection with the design, development or manufacture of any CareFusion infusion pumps or respiratory devices;

3.   Plaintiff shall post a bond of $1,300,000.00 pursuant to Federal Rule of Civil Procedure 65 within five business days of the issuance of this order;

13

4.   The parties are hereby granted leave to engage in mutual expedited discovery:

    a.   Plaintiff may request that defendant produce all documents in his possession, custody or control that concern or reflect any communication with CareFusion prior to January 7, 2013;

    b.   Plaintiff may request that Frisbie return all of Smiths Medical's documents in his possession, custody or control; and

    c.   Defendant may request discovery regarding the corporate structure of Smiths Group;

5.   This order shall remain in full force and effect until February 22, 2013, unless this court specifically orders otherwise.

Dated:  January 24, 2013

                                s/David S. Doty

                                David S. Doty, Judge
                                United States District Court